2012 ME 125

**Myndilee WONG**

v.

**Jack HAWK.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 27, 2012.

Decided: Nov. 6, 2012.

William J. Schneider, Attorney General, and Carlos Diaz, Asst. Atty. Gen., Office of Attorney General, for appellant Department of Health and Human Services.

Jack L. Hawk, appellee pro se.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1]  The Department of Health and Human Services (DHHS) appeals from a judgment entered in the District Court (Portland, *Eggert, J.*) modifying a child support order of the Family Law Magistrate (*Najarian, M.*).  DHHS asserts that (A) the District Court erred in crediting toward Jack Hawk's support obligation the dependent benefit his daughter receives based on his Social Security retirement account, and (B) the magistrate did not abuse her discretion in declining to deviate from the child support guidelines. We agree, vacate the District Court's judgment, and remand with instructions to reinstate the magistrate's modification order.

## I.  BACKGROUND

[¶ 2]  Jack Hawk and Myndilee Wong divorced in 2002, and Wong received primary custody of their only child, a daughter who turned seven that year.  The initial child support order required that Hawk pay $165.33 per week in child support.  In 2008, the District Court (*Cantara, J.*) increased Hawk's support obligation to $187.95 per week, based on an imputed annual income of $80,000 for Hawk, $25,000 income for Wong, and Hawk's provision of health insurance for his daughter.

[¶ 3]  In July 2011, DHHS filed a motion to modify Hawk's child support obligation, based on an alleged decline in his annual income from $80,000 to $38,344. The magistrate held a hearing on the mo-

tion, at which DHHS presented evidence, Wong testified, and Hawk participated telephonically, also testifying. The magistrate made the following findings: Hawk is a retired architect who receives Social Security retirement income, earnings as a part-time professor, and rental revenue, for a total gross annual income of $46,066.50. Wong receives rental income and wages from part-time employment performing odd jobs, for a total gross annual income of $21,600.

[¶ 4] The magistrate also found that the daughter suffers from mental illness and spends most days in a residential facility. As a result, each week, Wong attends at least four multi-hour meetings related to her daughter's treatment. The daughter has, since May 2010, received $1001 in monthly Social Security dependent benefits based on Hawk's Social Security retirement account. The magistrate found that Hawk voluntarily retired and reduced his income, not because he was unable to work, but to provide his daughter with the dependent benefit. The magistrate based this finding on Hawk's own admission, and the attachment to Hawk's child support affidavit stated, "I am a 65 year old diabetic who due to [the] down turn in our area's building [industry] retired early so my daughter could receive benefits which I hoped would help [Wong] in [the child's] care."

[¶ 5] Applying the child support guidelines to these findings, the magistrate concluded that Hawk's child support obligation was $152.32 per week. The magistrate considered deviation from the guidelines pursuant to 19–A M.R.S. § 2007 (2011) based on the daughter's receipt of the dependent benefit. However, the magistrate ultimately concluded that application of the guidelines without deviation for the dependent benefit was "just and equitable" based on Hawk's voluntary retirement and the child's special needs, which affected Wong's ability to maintain full-time employment. The magistrate did not consider whether, pursuant to 19–A M.R.S. § 2107 (2011), Hawk should receive a credit toward his child support obligations based on his daughter's receipt of the dependent benefit. Hawk did not move for additional findings of fact or conclusions of law pursuant to M.R. Civ. P. 52(b).

[¶ 6] Following the modification order, Hawk filed an objection in the District Court pursuant to M.R. Civ. P. 118(a), requesting, among other things, that the court credit the child's dependent benefit toward his child support obligation. The court (*Eggert, J.*) modified the magistrate's order without a hearing. Based on the magistrate's factual findings as to the amount of the dependent benefit and the weekly child support obligation, the court concluded that 19–A M.R.S. § 2107 provided Hawk with a child support credit in an amount equal to the child's dependent benefit. The court recognized that the plain language of section 2107 provides the credit only for benefits received as a result of the obligor's disability, but concluded that even if section 2107 did not apply to retirement account benefits, a deviation from the child support guidelines based on the child's receipt of the dependent benefit was appropriate pursuant to 19–A M.R.S. § 2007.

## II.   LEGAL ANALYSIS

[¶ 7] DHHS raises two issues on appeal. First, DHHS argues that the District Court erred as a matter of law in granting Hawk a credit toward his child support obligation for the child's receipt of the dependent benefit, because 19–A M.R.S. § 2107 authorizes a credit only for benefits derived from a parent's disability and not from a parent's retirement. Sec-

ond, DHHS contends that the magistrate did not abuse her discretion in declining to deviate from the child support guidelines pursuant to 19–A M.R.S. § 2007, and therefore the District Court erred in summarily reversing the magistrate's decision. We address each argument in turn.

## A. The Dependent Benefit Credit Pursuant to 19–A M.R.S. § 2107

[¶ 8] Whether the District Court erred in concluding that 19–A M.R.S. § 2107 permits a credit toward child support obligations for retirement account benefits is a question of statutory interpretation that we review de novo. *See Liberty Ins. Underwriters, Inc. v. Estate of Faulkner,* 2008 ME 149, ¶ 15, 957 A.2d 94; *see also Pratt v. Sidney,* 2009 ME 28, ¶ 7, 967 A.2d 685 (providing for de novo review of a District Court's additional legal conclusions following a family law magistrate's order). In interpreting a statute, we examine the plain meaning of the language to "avoid absurd, illogical or inconsistent results." *Schaefer v. State Tax Assessor,* 2008 ME 148, ¶ 7, 956 A.2d 710 (quotation marks omitted). "Words in a statute must be given meaning and not treated as meaningless and superfluous." *Blue Yonder, LLC v. State Tax Assessor,* 2011 ME 49, ¶ 10, 17 A.3d 667 (quotation marks omitted).

[¶ 9] In relevant part, 19–A M.R.S. § 2107 provides that after calculating a parent's child support obligation, a court must apply a credit toward that obligation "[i]f a child receives dependent benefits as a result of the obligor parent's disability." To grant the credit, the tribunal "shall" find that "the child currently receives dependent benefits as a result of the obligor parent's disability." *Id.* § 2107(2)(A). Section 2107 does not define what constitutes a disability, and the provision does not expressly provide a credit for dependent benefits as a result of a parent's retirement. Thus, we must determine whether, as the District Court concluded, a parent's retirement is sufficiently equivalent to a disability to fall within the child support credit authorized by section 2107.

[¶ 10] We have previously recognized, albeit in a different context, that "retirement benefits do not fill the same role as disability benefits, but represent a form of entitlement deriving from the employee's years of work.... [Retirement benefits] may be elected voluntarily, and have nothing to do with disability." *Dishon v. Me. State Ret. Sys.,* 569 A.2d 1216, 1217 (Me.1990) (addressing benefits affected by 5 M.R.S.A. §§ 1095, 1122 (1979)).[1] In contrast, disability benefits generally constitute compensation for a personal injury that impairs earning capacity. *See, e.g., Carroll v. Celsius Contractors,* 637 A.2d 111, 111–12 (Me.1994) (concluding that a claim for workers' compensation benefits requires a showing of disabling injury); *Wiedmaier v. Comm'r,* 774 F.2d 109, 111 (6th Cir.1985) (noting that federal tax regulations "distinguish between benefits that are intended to compensate an employee for lost earning capacity due to an injury ... and those benefits that are simply a retirement pension in consideration for past services").[2]

1. Title 5 M.R.S.A. §§ 1095 and 1122 have since been repealed. P.L.1985, ch. 801, § 2 (effective Jan. 1, 1987).

2. *See also* Black's Law Dictionary 528–29 (9th ed.2009) (defining "disability" as "[a]n objectively measurable condition of impairment, physical or mental," and "disability benefits" as "[p]ayments from public or private funds to a disabled person who cannot work, such as social-security or workers'-compensation benefits"); 4 Larson's Workers' Compensation Law § 80.02 (2012) (noting that in the workers' compensation context, a disability requires two elements: a disability in the

[¶ 11] The analysis we have recognized in other contexts applies with equal force here. Disability is not synonymous with retirement. For purposes of 19–A M.R.S. § 2107, a benefit results from "the obligor parent's disability" only if it accrued due to an injury or illness that impaired that parent's earning capacity.

[¶ 12] In Hawk's case, the dependent benefit his daughter receives is based on his Social Security retirement account, not on a disability resulting from an injury that impaired his earning capacity. Hawk retired due to a downturn in the building industry and to provide the dependent benefit for his daughter. Reading section 2107 to apply to retirement accounts would render superfluous section 2107's reference to dependent benefits based on a disability. *See Blue Yonder, LLC,* 2011 ME 49, ¶ 10, 17 A.3d 667. Accordingly, the District Court erred in granting Hawk credit toward his support obligation based on his daughter's Social Security retirement dependent benefit.

B. Deviation from the Child Support Guidelines Pursuant to 19–A M.R.S. § 2007

[¶ 13] DHHS also contends that the District Court erred in summarily reversing the magistrate's decision not to grant a deviation from the child support guidelines because the magistrate acted within the bounds of her discretion when she declined to deviate. Before addressing the merits of this argument, we first identify the proper standard of review.

[¶ 14] When the District Court modifies a family law magistrate's decision in part and adopts that decision in part pursuant to M.R. Civ. P. 118 (a)(2), we review both the magistrate's decision and the District Court's order. *See Dep't of*

Health & Human Servs. v. Pelletier, 2009 ME 11, ¶ 14, 964 A.2d 630. If the District Court has not disturbed the magistrate's factual findings, we review those findings directly for clear error, and review the District Court's additional legal conclusions de novo. *Pratt,* 2009 ME 28, ¶ 7, 967 A.2d 685. Our review of a trial court's decision addressing deviation from the child support guidelines is for an abuse of discretion. *Dep't of Human Servs. v. Monty,* 2000 ME 96, ¶ 10, 750 A.2d 1276. When the District Court reviews a family law magistrate's discretionary decision while acting in an appellate capacity, without conducting additional fact-finding, we directly review the magistrate's decision. *See Sylvester v. Vitagliano,* 2002 ME 141, ¶¶ 5, 8, 9, 804 A.2d 391.

[¶ 15] Here, the District Court acted in an appellate capacity when it reversed the magistrate's decision not to deviate pursuant to section 2007. The court's decision that a deviation was justified, even if the section 2107 credit did not apply, was not an additional legal conclusion but rather a summary reversal of the magistrate's exercise of discretion in the deviation determination. Accordingly, we directly review the magistrate's factual findings for clear error, and the magistrate's child support order for an abuse of discretion. *See Pratt,* 2009 ME 28, ¶ 7, 967 A.2d 685; *Sylvester,* 2002 ME 141, ¶¶ 5, 8, 9, 804 A.2d 391; *Monty,* 2000 ME 96, ¶ 10, 750 A.2d 1276.

[¶ 16] Turning to clear error review of the magistrate's factual findings, the findings are consistent with the parties' testimony and the evidence. Hawk admitted that he retired due to the downturn in the building industry and to obtain dependent benefits for his daughter. As for Hawk's contention that the magistrate

medical sense, and an inability to earn wages).

erred in calculating the parties' respective incomes and the amount of time Wong spent caring for the child,[3] absent any evidence to the contrary, the magistrate was entitled to make a credibility determination as to the extent to which she should credit Hawk's testimony. *See Conrad v. Swan*, 2008 ME 2, ¶ 9, 940 A.2d 1070 (noting the fact-finder's "superior position to evaluate the credibility and good faith of the parties"). Moreover, Hawk did not present any evidence contesting DHHS's exhibits, other than his own statements, and he did not make a M.R. Civ. P. 52(b) motion requesting additional findings of fact and conclusions of law. Accordingly, we discern no error in the magistrate's fact-finding, and otherwise assume that the magistrate made all the findings necessary to support her decision. *See Ezell v. Lawless*, 2008 ME 139, ¶ 23, 955 A.2d 202.

[¶ 17] Next, we consider the magistrate's decision not to deviate from the child support guidelines for an abuse of discretion. *See Monty*, 2000 ME 96, ¶ 10, 750 A.2d 1276. The guidelines create a rebuttable presumption of the proper support obligation. 19–A M.R.S. § 2005 (2011). However, a court may deviate from the guidelines upon a finding that their application "would be inequitable or unjust" based on one or more of several statutory criteria. *Id.* § 2007(1). The party who proposes deviation "shall provide the court with written proposed findings showing that the application of the presumptive amount would be inequitable or unjust." *Id.* § 2007(2). We presume that a trial court did not abuse its discretion in declining to deviate if a party fails to present proposed findings supporting deviation. *See Johnson v. Smith*, 1999 ME 168, ¶ 14, 740 A.2d 579.

[¶ 18] Hawk did not present proposed findings of fact and conclusions of law at any time before expiration of the ten-day M.R. Civ. P. 52(b) time period following the hearing before the magistrate. By the plain language of section 2007(2), which states that a party "shall" present such findings in order to obtain deviation, Hawk failed to adequately support his request for deviation, and therefore we presume that the magistrate acted within her discretion in declining to deviate. *See id.* Moreover, the magistrate did not violate any positive law in declining to deviate, because section 2007 makes deviation a matter of judicial discretion, and the magistrate found Hawk's request unpersuasive based on permissible statutory criteria.[4] *See* 19–A M.R.S. § 2007(3).

3. Although the parties did not provide us with a record explaining the daughter's physical and mental condition or Wong's time commitment in caring for her daughter, we assume that if a transcript or an audio file of the hearing were included in the record on appeal, it would support the magistrate's findings. *See State v. Hughes*, 2004 ME 141, ¶ 7, 863 A.2d 266.

4. These criteria include consideration of the child's financial resources, the child's physical and emotional condition and educational needs, each party's financial resources and needs, and the available income and financial contributions of each spouse's current partner. *See* 19–A M.R.S. § 2007(3)(D), (E), (G), (H), (J) (2011). Applying these criteria to the facts, Wong's time commitment in caring for the child, which in turn limited her employment opportunities, supported the decision not to deviate. *See Daigle v. Daigle*, 609 A.2d 1153, 1154–55 (Me.1992) (finding no abuse of discretion in deviating based on primary caregiver's financial resources and needs combined with the physical and emotional needs of the child). Although the child's receipt of dependent benefits was a relevant factor pursuant to section 2007(3)(D), it was not an abuse of discretion to place greater emphasis on other relevant factors. *See Dep't of Human Servs. v. Monty*, 2000 ME 96, ¶ 12, 750 A.2d 1276.

[¶ 19]   Because the record supports the magistrate's factual findings and the magistrate acted within the bounds of her discretion in concluding that a deviation was not warranted, we vacate the court's judgment and remand for entry of judgment reinstating the magistrate's order.   *See Pratt*, 2009 ME 28, ¶ 7, 967 A.2d 685; *Sylvester*, 2002 ME 141, ¶¶ 5, 8, 9, 804 A.2d 391; *Monty*, 2000 ME 96, ¶ 10, 750 A.2d 1276.

The entry is:

Judgment of the District Court is vacated.   Remanded with instructions to reinstate the magistrate's order.